IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW HINDMAN, ANGIE HINDMAN, BRIANNA HOLLAND, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF PITTSBURGH, PENNSYLVANIA, COMMANDER CRISTYN ZETT, OFFICER AREN COX <br><br> Defendants. | 2:23-CV-01873-CCW |

## OPINION

Before the Court are Motions to Dismiss by Defendants City of Pittsburgh, Pennsylvania (the "City of Pittsburgh"), ECF No. 34, Commander Cristyn Zett, ECF No. 39 and Officer Aren Cox, ECF No. 41. For the reasons set forth below, the Court will grant the City's and Commander Zett's Motions and will grant in part and deny in part Officer Cox's Motion.

### I.  Background

This case stems from the Pittsburgh Bureau of Police's arrest of Plaintiffs Matthew Hindman, Angie Hindman, and Brianna Holland. Ms. Holland is the daughter of husband-and-wife Mr. and Mrs. Hindman (collectively, "the Hindmans"). ECF No. 32 ¶ 12. Commander Zett and Officer Cox are both employed by the Pittsburgh Bureau of Police, which is operated by the City of Pittsburgh. *Id.* ¶¶ 9, 10, 11. In their Second Amended Complaint,[1] Plaintiffs assert a *Monell* claim under 42 U.S.C § 1983 (Count 4) against the City of Pittsburgh. As to Commander

---

[1] Plaintiffs commenced this action on October 30, 2023, and asserted claims against the City of Pittsburgh, Jane Doe, John Doe, Michelle Mc-Henry and the Pittsburgh Bureau of Police. ECF No. 1. On December 12, 2023, Plaintiffs filed an amended complaint that only asserted claims against the City of Pittsburgh, John Doe, and Commander Zett. ECF No. 8. On January 2, 2024, Plaintiffs substituted Officer Cox for John Doe. ECF Nos. 14, 15. The operative Second Amended Complaint was filed on February 1, 2024. ECF No. 32.

Zett and Officer Cox, Plaintiffs assert the following claims: a § 1983 malicious prosecution claim under the Fourth Amendment (Count 1); a § 1983 due process claim under the Fourteenth Amendment (Count 2); a § 1983 civil rights conspiracy claim (Count 3); and a Pennsylvania "malicious prosecution/abuse of process" claim (Count 6).[2] [3]

The following facts are accepted as true. On October 30, 2021, the Hindmans and Ms. Holland arranged to meet at a bar called Brookline N' Sinker. *Id.* ¶ 22. Ms. Holland arrived at the bar around 10:00 pm and saw an intoxicated man outside of the bar who was flailing, struggling to break through a door, and threatening people inside of the bar. *Id.* ¶ 24. Mr. Hindman was already outside the bar trying to deescalate the situation. *Id.* ¶ 25. Shortly thereafter, the Pittsburgh Police arrived with activated lights and handcuffed the man, before subsequently releasing him. *Id.* ¶¶ 26, 28. When the Pittsburgh Police arrived, non-party Michelle McHenry-Auge, a former Pittsburgh Police Detective, who was a known "problem officer," exited the bar and walked in the opposite direction of the police. *Id.* ¶¶ 12, 13, 27. Ms. McHenry-Auge eventually returned to the bar, and when she entered, the bartender yelled that she was already told to leave once. *Id.* ¶ 32. Ms. McHenry-Auge then began to yell, spit on, and punch Mrs. Hindman. *Id.* ¶ 33. Ms. Holland attempted to break up the incident and help her mother, but then Ms. McHenry-Auge began kicking both Mrs. Hindman and Ms. Holland. *Id.* ¶ 35. The altercation was eventually pushed outside, and Ms. Holland began screaming at Ms. McHenry-Auge to get off of Mrs. Hindman. *Id.* ¶¶ 36, 37. In response, Ms. McHenry-Ague bit Mrs. Hindman's leg and would not let go. *Id.* ¶ 38. The altercation ended when Ms. McHenry-Auge released the bite on Mrs. Hindman's leg. *Id.* ¶ 39. Mr. Hindman was not involved in the altercation. *Id.* ¶ 44.

---

[2] The Second Amended Complaint omits a Count 5.

[3] The Court has federal question jurisdiction over Counts 1 through 4 under 28 U.S.C. § 1331 and supplemental jurisdiction over Count 6 under 28 U.S.C. § 1367(a).

2

Following the altercation, Plaintiffs returned to the bar and went to the bathroom to address the bite on Mrs. Hindman's leg. *Id.* ¶¶ 40, 41. During that time, the Pittsburgh Police returned to the bar without their lights activated. *Id.* ¶ 42. Plaintiffs went outside to speak with the police, and Officer Cox informed them that they were being arrested. *Id.* ¶ 44. Commander Zett later arrived on the scene and informed Mr. Hindman that she was going to notify his boss[4] that he had been arrested. *Id.* ¶ 45. Officer Cox then arrested and criminally charged the Plaintiffs. *Id.* ¶ 17. Mrs. Hindman was criminally charged with strangulation-aggravated assault and retaliation against a victim/witness. *Id.* ¶ 46. Ms. Holland was criminally charged with simple assault and disorderly conduct. *Id.* ¶ 48. The Second Amended Complaint is silent on what charges were brought against Mr. Hindman. Plaintiffs spent time incarcerated at the Allegheny County jail before all criminal charges were dropped. *Id.* ¶¶ 47, 52. Ms. McHenry-Auge was never investigated or charged for her role in assaulting Mrs. Hindman and Ms. Holland. *Id.* ¶ 55.

The City of Pittsburgh, Commander Zett, and Officer Cox now seek to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that that Plaintiffs fail to state a claim. ECF Nos. 32, 39, 41.

## II.     Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions.

---

[4] Mr. Hindman's boss is the Director of the Department of Public Works. At the time of Mr. Hindman's arrest, he was being considered for a different position.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

**III.     The City of Pittsburgh's Motion to Dismiss**

The City of Pittsburgh argues that Plaintiffs cannot state a *Monell* claim because the Second Amended Complaint only alleges general wrongdoing and does not allege a policy or custom, a policymaker, or causation. ECF No. 35. The City of Pittsburgh further argues that to the extent the Plaintiffs assert a *Monell* claim based on the failure to train, this too fails because they have not alleged a pattern of similar violations. *Id.* In response, Plaintiffs assert that they have properly pleaded that the City of Pittsburgh fails to investigate allegations of misconduct involving its own police officers and that is why Plaintiffs were wrongly arrested without an investigation into the former police officer who was also involved in the incident. ECF No. 37. In their briefing, the Plaintiffs cite and rely upon *City of Canton v. Harris*, 489 U.S. 378 (1989), and its progeny, which is a failure-to-train *Monell* case. Accordingly, the Court will construe their claim as this species of *Monell* claim and address whether the Second Amended Complaint states a failure-to-train claim against the City of Pittsburgh.[5]

---

[5] Plaintiffs' Response in Opposition to the Motion, ECF No. 37, focuses almost exclusively on a failure-to-train theory. However, to the extent Plaintiffs assert a *Monell* claim based on a custom or policy, other than a failure to train, Plaintiffs have not plausibly alleged a policymaker or causal connection between such custom or policy, assuming one exists, and the asserted injury in this case.

4

The Supreme Court has held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388. The "failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.* at 390. Thus, under a failure-to-train claim, a plaintiff need not allege a specific policy. *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir.1999). However, a failure to train or educate claim generally requires a "pattern of similar constitutional violations by untrained employees" in order to "demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62–63 (2011). Thus, a plaintiff must allege deliberate indifference:

> [I]n order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

*Carter*, 181 F.3d at 357. "Although it is possible, proving deliberate indifference in the absence of such a pattern is a difficult task." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). In addition to proving deliberate indifference, a plaintiff must also demonstrate that the inadequate training caused a constitutional violation. *Carswell*, 381 F.3d at 244–45. There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001).

The Court agrees with the City of Pittsburgh that the Second Amended Complaint fails to allege a pattern of underlying constitutional violations. As the Court understands it, the Second Amended Complaint alleges that the City of Pittsburgh had a policy, practice and/or custom of failing to train its Pittsburgh police officers to properly investigate incidents involving current or

5

former police officers. However, Plaintiffs plead no factual allegations in support of this asserted pattern or practice. ECF No. 32 ¶¶ 61–66, 86–95. Rather, Plaintiffs merely recite the elements of a failure-to-train claim. *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) ("Simply paraphrasing § 1983 does not meet Rule 8's pleading requirements because it fails to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability.") (cleaned up).

For example, in *Royer v. Robertson*, No. 3:22-CV-00061, 2023 WL 6319982, at *10 (W.D. Pa. Sep. 28, 2023), the Court dismissed an amended complaint because it contained "no facts suggesting that any of the three requirements for a finding of deliberate indifference set forth in *Carter* are satisfied" and did not "allege[] any prior constitutional violations by the City of DuBois or its employees that would put the city on notice that new training was necessary." The same is true here. For example, Plaintiffs conclusorily allege that "[t]his custom and or policy is also at issue in current litigation against the Defendant City of Pittsburgh and was also the subject of past litigation involving the Defendant City of Pittsburgh." ECF No. 32 ¶ 92.[6] But they do not identify any other cases, any facts of those cases, or allege why those cases are similar to this one.

Further, Plaintiffs' assertions that the City of Pittsburgh had "actual knowledge" of the alleged constitutional violations, ECF No. 32 ¶¶ 66, 95, lacks factual support and are conclusory. *Wood*, 568 F. App'x at 105 ("The complaint was also deficient in alleging a claim for failure to train or supervise. The complaint did not allege facts showing any particular or specific policy or custom, or how it allowed the claimed constitutional violation to occur, identifying the policymaker or decisionmaker, or showing prior notice through a pattern of similar constitutional

---

[6] A plaintiff can assert a single-incident theory of a failure to train claim. Here, however, Plaintiffs allege that there have been other incidents where the City of Pittsburgh allegedly failed to train their officers, and that the City of Pittsburgh was aware of such other incidents. Because the Second Amended Complaint is not alleging a single-incident theory of failure to train, the Court need not address that theory.

violations."). Thus, the Court will grant the City of Pittsburgh's Motion and dismiss the *Monell* claim asserted against it.

### IV.     Commander Zett's Motion to Dismiss

Plaintiffs assert § 1983 claims of malicious prosecution, due process violations, civil rights conspiracy, and a Pennsylvania "malicious prosecution/abuse of process" claim against Commander Zett. Commander Zett argues that Plaintiffs cannot state a § 1983 claim against her because they fail to allege that she had any personal involvement in their arrest or criminal charges. ECF No. 39. In response, Plaintiffs argue that "the overall nature of the claim [] is that Defendant Zett did not do her job related to her supervision of Defendant Cox and overseeing this arrest of the Plaintiffs for their alleged role in a situation which was not caused by them and in which they did nothing wrong." ECF No. 44 at 5. They further contend that Commander Zett knew of and acquiesced to Officer Cox's asserted violations of Plaintiffs' constitutional rights because "she showed up on the scene, inserted herself into the situation, and maliciously relayed to Plaintiff Hindman that she was going to inform his supervisor." *Id.*

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3, (1981)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.* (citation omitted). But for a supervisory official to have "had knowledge of and acquiesced" in a subordinate's unconstitutional conduct, *Dinote v. Danberg*, 601 F. App'x 127, 131 (3d Cir. 2015), the supervisor must have had actual, contemporaneous knowledge of the violation at issue. *See Reyes v. Gilmore*, Civ. Action

7

No. 18-746, 2020 WL 734223, at *6 (W.D. Pa. Feb. 13, 2020) (Dodge, M.J.) (dismissing § 1983 claim where plaintiff "failed to allege any personal involvement by [the supervisor] or contemporaneous knowledge of the incident"). The Third Circuit has explained that

> Supervisory liability is available only if the supervisor (1) "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm,'" or (2) "'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct."

*Dinote*, 601 F. App'x at 131 (3d Cir. 2015) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) *rev'd on other grounds sub. nom. Taylor v. Barkes*, 575 U.S. 822 (2015)).

The Court finds that there are insufficient allegations to establish Commander Zett's personal involvement in the alleged constitutional violations. The only factual allegation regarding her involvement is that she "arrived on scene" and "personally informed" Mr. Hindman that "she was going to inform the Director of Pittsburgh Department of Public Works," which is Mr. Hindman's boss, of Mr. Hindman's arrest. ECF No. 32 ¶¶ 15, 45. There are no allegations that Commander Zett was involved in the investigation, arrest, or charges brought against Plaintiffs. In fact, the Second Amended Complaint alleges Officer Cox, not Commander Zett, made the arrests and initiated the criminal charges. *Id.* ¶ 19. There are no allegations that Commander Zett displayed deliberate indifference, established and maintained a policy, or directed Officer Cox to take any action as to Plaintiffs. While Plaintiffs argue that Commander Zett had knowledge and acquiesced to Officer Cox's conduct, ECF No. 44 at 5 ("[Zett] should have been aware, or was aware and ignored, of the inadequacy of the investigation."), the Second Amended Complaint does not so allege, ECF No. 32 ¶ 10 (conclusorily stating "Zett ordered, authorized, participated in,

8

and/or acquiesced in the violation of Plaintiff's rights as alleged herein"). Accordingly, the Court will grant Commander Zett's Motion and dismiss all claims asserted against her.

## V. Officer Cox's Motion to Dismiss

Plaintiffs assert § 1983 claims of malicious prosecution, due process violations, and civil rights conspiracy, and a Pennsylvania "malicious prosecution/abuse of process" claim against Officer Cox. Officer Cox argues that Plaintiffs cannot state a claim on any count in the Second Amended Complaint. ECF No. 41. First, Officer Cox argues that Plaintiffs' malicious prosecution claim can only be brought under the Fourth Amendment, as pleaded in Count 1, and cannot be pursued under the Fourteenth Amendment, as pleaded in Count 2. Officer Cox further argues that Plaintiffs fail to state a claim for fabrication of evidence or reckless investigation under the Fourteenth Amendment in Count 2 because they have not alleged sufficient facts. Second, Officer Cox argues that Plaintiffs fail to state a claim for civil conspiracy in Count 3 because they have not alleged sufficient facts. Third, Officer Cox argues that even if Plaintiffs could state a claim in Counts 1 through 3, he is entitled to qualified immunity. Fourth, Officer Cox argues that Plaintiffs' state law claims in Count 6 fail to state a claim for abuse of process and that he is entitled to governmental immunity under state law. The Court will address each argument in turn.

### 1. The Due Process Claim in Count 2 will be Dismissed

Officer Cox seeks to dismiss Count 2 on a variety of bases: (1) he argues that Count 2 is duplicative of Count 1 and that a malicious prosecution claim cannot be maintained under the Fourteenth Amendment; (2) the fabrication-of-evidence claim fails because only the elements of the cause of action have been pleaded; and (3) any failure to investigate claim also fails. In response, Plaintiffs rely upon *Black v. Montgomery Cnty.*, 835 F.3d 358 (3d Cir. 2016) to argue that the Third Circuit has accepted the manner in which their claims are pleaded. ECF No. 43.

Officer Cox's first and third arguments can be easily addressed together.  Having reviewed the Second Amended Complaint and Plaintiffs' Response in Opposition to the Motion, the Court concludes first, that Plaintiffs are not asserting a malicious prosecution claim under the Fourteenth Amendment, and second, that Plaintiffs are not asserting a failure to investigate claim.  As to the malicious prosecution claim, while there is some overlap between paragraphs 68 and 75 in that they both state "[t]he Individual Defendants caused the initiation of criminal charges against Plaintiffs without probable cause…," paragraph 68 expressly states that Officer Cox "subjected Plaintiffs to *malicious prosecution in violation of their rights under the Fourth Amendment*" and in contrast, paragraph 75 states that Officer Cox "*fabricated* evidence against Plaintiffs depriving Plaintiffs of their due process rights guaranteed by the *Fourteenth Amendment*."  ECF No. 32 ¶¶ 68, 75 (emphasis added).  As to the reckless investigation claim, there are no allegations in the Second Amended Complaint and no indication from Plaintiffs that they are asserting that claim.  While the Second Amended Complaint and briefing references a failure to investigate, the Court views those allegations as relating to either the failure-to-train claim against the City of Pittsburgh, *supra* at 4–6, or the malicious prosecution claim in violation of the Fourth Amendment under Count 1 which Officer Cox does not challenge.  Plaintiffs do not appear to be asserting a separate failure to investigate claim as Officer Cox contends.  Thus, the Court concludes that the only asserted claim in Count 2 is one for fabrication of evidence in violation of the Fourteenth Amendment.

Plaintiffs have not pleaded sufficient factual allegations to state such a claim against Officer Cox.  Under Third Circuit law, "[t]o state a successful Section 1983 claim for knowingly falsified evidence, a plaintiff must show a 'reasonable likelihood that, absent that fabricated evidence, [he] would not have been criminally charged.'" *Lentz v. Taylor*, No. 19-1756, 2021 WL

5121247, at *4 (3d Cir. Nov. 4, 2021) (citing *Black*, 835 F.3d at 371. "The 'reasonable likelihood' standard we employ simply requires that a plaintiff draw a 'meaningful connection' between her particular due process injury and the use of fabricated evidence against her." *Id.* (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 294 n.19 (3d Cir. 2014)). Moreover, "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Halsey*, 750 F.3d at 295. Rather, there must be "'persuasive evidence supporting a conclusion that the proponents of the evidence' are aware that evidence is incorrect or that the evidence is offered in bad faith." *Id.* A pleading must contain allegations describing such persuasive evidence in order to survive a motion to dismiss. *See Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 70 (3d Cir. 2017).

Here, Plaintiffs have not alleged any facts to support their fabrication of evidence claim. They do not identify what evidence was fabricated, who fabricated the evidence, or when the evidence was fabricated. Thus, there are no allegations describing the "persuasive evidence" and the Second Amended Complaint is conclusory on this issue. *Guzman v. City of Newark*, No. CV 20-6276, 2022 WL 1044957, at *7 (D.N.J. Apr. 7, 2022) (granting motion to dismiss fabrication claim where plaintiff only offered "conclusory allegations" which were "insufficient to meet the high bar to plead a fabrication of evidence claim"). Thus, Officer Cox's Motion will be granted as to Count 2.

### 2. The Civil Rights Conspiracy Claim in Count 3 will be Dismissed

Officer Cox next argues that the § 1983 conspiracy claim in Count 3 fails because Plaintiffs do not allege any overt acts in furtherance of any alleged conspiracy. ECF No. 42 at 12. Plaintiffs respond that because "there was no reason to arrest any of the Plaintiffs," "the actions of Officer

Cox and Commander Zett show an agreement to continue the arrest of the Plaintiffs in deprivation of their constitutional rights." ECF No. 43 at 10.

A § 1983 conspiracy claim requires, "at base, an agreement to deprive an individual of some legal right." *Khalil v. N.J. Div. of Child Prot. & Permanency*, 594 F. App'x 88, 91 (3d Cir. 2015) (affirming dismissal of conspiracy claims under § 1983 "because the 'bare allegation of an agreement is insufficient to sustain a conspiracy claim.'") (citation omitted). Civil rights conspiracy claims, furthermore, must be pled with specificity. *See Brown v. City of Phila.*, 199 F. App'x 107, 109 (3d Cir. 2006) (citing *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989)). That is, to adequately plead a civil rights conspiracy claim, a plaintiff must set forth "specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity." *Mincy v. Klem*, No. 1:08-CV-0066, 2009 WL 331432, at *5 (M.D. Pa. Feb. 9, 2009) (citing *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985)).

The Court agrees with Officer Cox that Plaintiffs have failed to state a conspiracy claim here. The Second Amended Complaint includes no factual allegations that "show a meeting of the minds and some type of concerted activity." *Id.* Instead, the Second Amended Complaint merely alleges that Officer Cox arrested and charged Plaintiffs, and at some point, Commander Zett arrived on the scene and told Mr. Hindman that she would be informing his boss of the arrest. ECF No. 32 ¶¶ 19, 15. The allegations as to an alleged conspiracy, *id.* ¶¶ 81–83, are conclusory and merely recite the elements of the claim without specific facts, which is insufficient to state a claim, *Mincy*, 2009 WL 331432, at *5 (dismissing conspiracy claim where the "complaint is devoid of specific facts" and "Plaintiff relies on subjective suspicions and unsupported speculation"). Accordingly, the Court will grant Officer Cox's Motion as to Count 3.

### 3. Officer Cox is Not Entitled to Qualified Immunity at this Time

Officer Cox has not challenged the sufficiency of Plaintiffs' malicious prosecution claim in Count 1 of the Second Amended Complaint, which is the only federal claim remaining. He does, however, contend that he is entitled to qualified immunity. The basis for his assertion is strangely worded, but he appears to be arguing that the constitutional right was not "clearly established" at the time he acted because "[t]here is no clearly established right to be free from being told that you are under arrest or to be free from being arrested after being involved in an altercation at a bar." ECF No. 42 at 14. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Thus, the question before the Court is whether it would have been clear to Officer Cox that his conduct was unlawful in the situation involving Plaintiffs.

The Third Circuit has acknowledged that "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established right." *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2022). Here, the Court finds that the factual record is insufficiently developed to determine whether Officer Cox is entitled to qualified immunity. There are insufficient facts regarding Officer Cox's investigation, the arrest, and criminal charges for the Court to determine what Officer Cox did or did not know at the time he acted. *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964) (explaining that courts must determine "whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was

13

committing an offense."). Thus, deciding whether Officer Cox is entitled to qualified immunity at this time would be premature. *Vanderhoff v. City of Nanticoke*, No. 3:18-cv-1071, 2018 WL 4565673, at *9 (M.D. Pa. Sep. 24, 2018) (denying motion to dismiss based on qualified immunity because "[a]t this stage of the proceedings, it does not appear that qualified immunity exists as a matter of law on the face of the Second Amended Complaint"); *Newland v. Reehorst*, 328 F. App'x 788, 791 n. 3 (3d Cir. 2009) ("[I]t is generally unwise to venture into a qualified immunity analysis at the pleadings stage as it is necessary to develop the factual record in the vast majority of cases."); *Janwoski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 122–25 (D.N.J. 2017) ("[T]he totality of the circumstances known to the officer must be established on the face of the complaint in order for this Court to carry out its qualified immunity analysis."). Accordingly, the Court will deny Officer Cox's Motion to dismiss Count 1 based on qualified immunity.

### 4. Officer Cox's Motion to Dismiss Count Six will be Granted in Part and Denied in Part

Officer Cox argues that Plaintiffs' Pennsylvania state law malicious prosecution and abuse of process claims in Count 6 fail because Officer Cox is entitled to governmental immunity under 42 Pa. C.S.A. § 8541. ECF No. 42 at 17.[7] He further argues that the abuse of process claim should be dismissed with prejudice because there is no allegation of "process" following the arrest and the charges were subsequently dropped. *Id.* at 18–19. In response, Plaintiffs indirectly argue that because they have asserted intentional torts, their claims do not fall within the gambit of governmental immunity. ECF No. 43 at 12. They do not address the challenges to the Pennsylvania abuse-of-process claim.

---

[7] Officer Cox also argues that the Court should decline to exercise supplemental jurisdiction as all of the federal claims should be dismissed. As Count 1, a federal claim, remains in this action, the Court will exercise supplemental jurisdiction over Count 6.

The Court declines to dismiss the Claims in Count 6 on governmental immunity grounds at this early procedural juncture. Under 42 Pa. C.S.A. § 8545, an employee of a municipality has immunity against suit to the same extent as his employer. "This immunity is lost only if 'it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice, or willful misconduct.'" *Hill v. Borough of Swarthmore*, 4 F. Supp. 2d 395, 397 (E.D. Pa. 1998) (citing 42 Pa. C.S.A. § 8550). For reasons similar to the Court's analysis on the issue of qualified immunity, the Court finds that it would be premature to determine that Officer Cox is entitled to governmental immunity without a further factual record. If Officer Cox's conduct constituted "actual malice" or "willful misconduct," he would not be immunized. *James v. Brant*, No. 3:22-CV-106, 2024 WL 23380, at *25 (W.D. Pa. Jan. 2, 2024) (Gibson, J.). Thus, the Court will deny Officer Cox's Motion as to Count 6 based on governmental immunity.

The Court will, however, dismiss the abuse-of-process claim in Count 6 for failure to state a claim. To establish an abuse-of-process claim under Pennsylvania law, a plaintiff must show that "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed[,] and (3) harm has been caused to the plaintiff." *Grasso v. Katz*, No. 22-2896, 2023 WL 4615299, at *3 (3d Cir. July 19, 2023) (applying Pennsylvania law). "[T]here is no action for abuse of process when the process is used for the purpose for which it is intended," even if "there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993). Therefore, "merely initiating . . . litigation for a wrongful purpose alone is not actionable." *Schwartz v. OneWest Bank, FSB*, 614 Fed. App'x 80, 83 (3d Cir. 2015) (cleaned up). Here, Count 6 does not contain any allegations or even the legal elements of an abuse-of-process claim. ECF No. 32 ¶¶ 96–98. In fact, despite the "malicious prosecution/abuse of process" heading for Count

15

6, the allegations only state "malicious prosecution." *Id.* ¶ 98. Accordingly, the Court will grant Officer Cox's Motion to dismiss the abuse of process claim in Count 6.

### VI. Plaintiffs Will be Granted Leave to Amend and Production of the Criminal Complaint

Defendants request that if the Court dismisses any claims, it do so with prejudice because Plaintiffs have previously amended their Complaint. ECF Nos. 35 at 19, 45 at 5–6. In response, Plaintiffs assert that their pleadings have been filed without the benefit of the criminal complaint underlying their claims. ECF No. 43 at 1. They contend that production of the criminal complaint would likely obviate the need for motions practice, but that Defendants have refused to produce that document despite multiple requests. *Id.* Commander Zett and Officer Cox concede that the criminal complaint has not been produced and argue that there is no obligation to produce discovery materials at this stage of the proceeding. ECF No. 45 at 3–5.

The Court has considered the parties' positions, and finds, first, that amendment would not be futile, and second, that production of the criminal complaint is warranted here. While Plaintiffs have made various amendments, they have not yet had the benefit of the Court's review of their pleading and could potentially allege additional facts that would render their claims plausible. Therefore, amendment would not be futile at this time. Furthermore, production of the criminal complaint at this juncture is necessary for efficient progress in this case. As discussed above, the Court cannot render a decision on qualified immunity without information regarding the investigation, arrest, and charges. As the decision of qualified immunity should be determined at the earliest opportunity, production of the criminal complaint will aid the Court in its determination. *Palma v. Atl. Cnty.*, 53 F. Supp. 2d 743, 768–69 (D.N.J. 1999) (permitting limited discovery because "the trial judge can . . . manage the discovery process to facilitate prompt and efficient resolution of the qualified immunity issue") (cleaned up). Accordingly, the Court will

require Defendants to produce the criminal complaint for each Plaintiff related to the October 30, 2021 incident. And Plaintiffs will be granted leave to amend.

**VII.   Conclusion**

For the foregoing reasons, the City of Pittsburgh's and Commander Zett's Motions to Dismiss are GRANTED, and Officer Cox's Motion to Dismiss is GRANTED in part and DENIED in part, as set forth fully in the accompanying Order.

DATED this 16th day of September, 2024.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge


cc (via ECF email notification):

All Counsel of Record